People of the State of Illinois v. Kenneth Tudor, we have Ms. Paige Straughn for Big Challenge, and Ms. Patsy Paley for the Act of the Union. I'm Paige Straughn. I represent Kenneth Tudor in this appeal. So, I'm going to raise, there were four issues raised in my brief, and I'm going to focus on the first issue and, if I have time, on the fourth issue. The first issue is that Kenneth Tudor was deprived of fair trial for three different reasons. One, there was entirely too much other crimes evidence presented. Number two, there was an unnecessary and prejudicial demonstrative exhibit. They produced pictures of these two complainants when they were very young children to show to the jury, even though both girls testified and there was no question about what they looked like. And third, there was testimony by a sex abuse nurse that was really prejudicial, had no foundation, and essentially was expert testimony when she wasn't qualified as an expert. What I really want to talk about is the first part, the too much other crimes evidence. While the defendant certainly understands that the statute allows for admission of other allegations of sexual offenses in these types of cases, it's not a free-for-all where you can present every single claim that may or may not have ever happened to anyone you ever met over the history of time. And essentially that's what happened in this case. These charges came from Madison County, and this is a family that moved all over the state over the course of these girls' lives. The charges that were brought when they lived in Alhambra, and that was when the girls were 14 years old, the older girl was 14 and the younger girl, I think, was 11 or 12 years old. But we have very little testimony about those actual incidents. We have testimony from when the oldest girl was 4 years old and lived in Rochester, according to her. Her parents, of course, said she never lived in Rochester. She also testified about things that happened in Springfield, where they lived and asked. Then in Marengo. Then in, I think, Trenton. And finally when they moved out to Southern Illinois, there were several towns they lived in here, in different counties in Southern Illinois as well. She testified to things that happened in every single one of those places, starting when she was 4 years old and ending when she was 14. The youngest daughter, she testified to things starting in Marengo when she was 5 or 6 years old, and then every single other town they ever lived in before they ended up in Madison County. I would say the evidence is probably maybe 8 to 1 as far as other crimes evidence versus the actual charges here that are actually at issue in this case. It's kind of hard to quantify, mostly because these little girls have never told the same story twice. They will claim, you know, a particular event happened and they were both at it, but one girl said that never happened, the other girl said it did. Statements that were made to DCFS investigators, to police officers, they will deny they either made the statements or that that ever happened or that's not what they said. There's absolutely no consistency. I don't think there's a single instance of any claim where each girl repeated herself, ever, about any of these events. From day one until it finally got to trial, the story changed every single time they opened their mouths. And they not only disputed themselves, they disputed each other. They disputed the officers or investigators at DCFS that talked about statements that they had made. There's absolutely no consistency anywhere. But essentially, that's all we have for evidence against the defendant. That's it. We have testimony of two little girls who don't know if they're coming or going, where they were, when they were there. The state justifies it on the basis that we don't really have any limits on the statute that allows other crimes evidence except for this one Cardamone case, which is huge numbers of other crimes evidence, that the court said, well, that's just too much. In Cardamone, it's a little different too, isn't it, because it was other victims. Here it was other acts on the same victims. Correct. Yes. In Cardamone, I think it was a gym teacher or something, a whole bunch of little girls in a gym, something like that. Maybe 14 or 15 other witnesses or something like that. The statute has not really, it's never really been kind of whittled down, you know what I mean, to say that we have this outer limit of Cardamone, but we don't have much else to work with to figure out exactly what it means. So essentially, it reads to me if we rely just on Cardamone and we never address this on a more defined sort of situation, you pretty much do whatever you want as long as you don't bring in 15 other girls to talk about 42 other things that happened. That can't possibly be what the statute means when it still requires a balancing test. This evidence still has to be more probative than it is prejudicial. In this case, it's not. The state says that these things are more probative than prejudicial based on the fact that the acts are very similar. Not really. I mean, there's only so many things you can do to a little girl, and it depends on which job you're talking to and on which day it is, how many of those things happen. You haven't actually raised as an issue the trial court's decision to allow the propensity evidence, right?  In other words, that would be reviewed on abuse of discretion. That's not an issue that's raised. I don't complain that it was error to admit some evidence. I just say they got terribly carried away. They should have limited it, should have limited the amount of evidence that they brought in. Yeah, I mean, actually, I mean, your issue is because of several things, the defendant was denied a fair trial. Because of the three different rulings that the judge made. So within that, it's your assertion that the trial court abuses discretion in allowing that extent. Correct, yes. Okay, okay. Sorry if I didn't make this clear. I'm just trying to make sure. Okay. You can see this is kind of a complicated case. When the state says it's simple, that's why Cardamone doesn't really apply because that was a complex case and this one isn't. You start comparing what child said what to who, when, it gets real complicated. You wouldn't believe the charts I had just to keep it straight in my head. And it's certainly not easy. It's very complicated. Yet we expect a jury of 12 people who are naturally sympathetic to some little girls to be able to keep this straight when we can't get them to agree with each other. And that is made more complicated by the fact that this evidence came in that never should have. The situation the acts alleged and that the other testimony was about are not really that similar. One of the little girls talked about anal intercourse. The other did not. One of them talked about their being in a threesome involved. The other one, I believe, was asked about that and said that absolutely did not happen, never did happen. Absolutely not. They couldn't agree on if each other knew that the other one was involved in such things, too. One claimed that I walked in and saw him. The other girl said that never happened. There's so much confusion there. So not only are they not much similar in the acts themselves, there's not much state claim they were similar in age when it started. Well, one girl claimed she was four. The other one claimed she was six or so. Hey, yeah, that sounds close, but they're little girls. We're talking about just a little bit of their life here. There's a big difference between a four-year-old and a six-year-old. That's not that similar. The only similarity that I'll give them is that they live in the same household. That's true. But so did two other little girls, and we've never heard anything about them. So the idea that this proves a pervasive pattern of things that were going on for years and years and years against all of his daughters, that's not really what this evidence shows at all. That takes away from the probative value of it and just becomes highly prejudicial because all of the evidence essentially, with the exception of just a tiny bit, was about other crimes and not about the ones that he was charged for in this offense. When you compare that to the admitted testimony of the younger daughter that, yeah, probably a quarter of what I've just testified to is not true, and I don't really remember all this stuff. Okay. She also claimed a ridiculous thing like that she was violated 15 times a month for all of these years, adds up to 600 or 800 times. Okay. That doesn't even make sense, especially in light of the other testimony that the defendant himself didn't actually live in the house that often because he worked for a railroad, and he wasn't home. He went home 15 days, so it couldn't have happened that way. I mean, there's so many little incidents there that just don't make sense and don't make these girls credible, and we have nothing else to back it up. We don't have any physical evidence. We've got a nurse who claims that 90% to 95% of sex abuse things, exams, present no evidence, no physical evidence. Well, where's the basis for that? That's interesting. Maybe that's because 90% to 95% of the exams you do are on people who have not actually been sexually abused. Maybe that's why, that there's not any physical evidence in this case. In any event, we don't have any. We don't have any physical evidence. We don't have anything else to back up these children's testimony. I'm sorry, did you have a question? No. When you consider how much of this testimony never should have been presented, it really tips the scale in favor of confusing the jury and convincing them that this is just a terrible man who has done wrong from the time his little girls were young until they were teenagers and something has to be done about it. And that's not the standard for proving him guilty of the charged offenses. So because of that reason alone, he would ask that you reverse his conviction and remand this for a new trial. But I've got several other things we could talk about if you'd like to. But those are the main ones, and I think they're laid out pretty clearly in the briefs. If you don't have any questions, that's all that I have. I think that's it. He'd ask that you reverse his conviction. Thank you. Okay, thank you, Ms. Drondala, for the opportunity to rebut Mr. Daly. Thank you, Your Honor. I raise the court and counsel. So as I understand the defendant's argument correctly, there's not really a dispute about whether the proper procedural mechanisms in order to utilize propensity evidence under 117-7.3 were met. It's just a question of whether the volume of evidence exceeded that which would be permissible so that there's a likelihood the defendant's denied due process in a future trial. There's really two cases out there that talk about this, the Cardamone case and then more explicitly the Walston case, both cases which come from the Second District Health Court. Now, Cardamone, which is relied upon by the defendant, was the first case, and it dealt with a trial involving seven charged and seven uncharged, multiple victims, over 100 witnesses total. There was undoubtedly a huge wealth of uncharged propensity evidence that was introduced against the defendant in that case in Cardamone. Such a state has a rule of due process and fairness that there is that possibility that while 117-7.3 can be fairly and correctly utilized for purposes of establishing propensity evidence, too much can be too much. And so there is implicit in that kind of a balancing test, if you will, of probative value versus prejudicial effect, and that's a concept hardly available when one works its way into all determinations of evidentiary value. The Walston case took a look at that case and said, all right, let's hold on to it because we didn't necessarily say in Cardamone that there is this right-line test that there's going to be too much. And they undertook an analysis to say, what did we mean? What is going to constitute too much evidence against a defendant with propensity evidence? And their analysis principally focused on the fact that the balancing test that we use to allow other crimes evidence and the dangers that are attempted to be avoided with other crimes evidence are characteristically different than propensity evidence under 117-7.3. I hope I'm getting the right stat here. 115-7.3. I'm sorry. I keep saying 117. What the court noted is that unlike the usual other crimes evidence scenario, the principal dangers to be avoided are that they are used to show a defendant's bad character and that they have a danger of showing a defendant has a propensity to commit criminal offenses. However, under 115-7.3, those considerations sort of go out the window because it's an obvious result of utilizing this type of evidence that, one, there's going to be some insinuation or clear idea that the defendant may have a bad character. And the whole purpose of the statute is to prove propensity. So the dangers that are inherent in when we deal with other crimes evidence are different than 115-7.3 propensity evidence. In that case, after analyzing and Wilson had analyzed these characteristics, the court ultimately came to the conclusion, really, of two things. Number one, there's really only on a trial court a rather modest distinction or a modest limitation as far as the amount of propensity evidence the state uses. In other words, it has to be mindful of what is allowed and make sure that there may not be alternative ways for the state to prove propensity evidence of this nature. But on the other hand, but by the same token, that's really kind of the limitations of it because this is such a characteristically different type of other crimes evidence allowed for by the statute, and thus said that these modest restrictions usually will dictate affirmance. And when propensity evidence is used by the state... Do you have any dispute with defense counsel's characterization as to the ratio of evidence outside of Madison County versus evidence of the alleged acts in Madison County? No, but again, I don't think that that ratio is a deciding factor because you have to understand there's a couple things at play here. Number one, propensity evidence is propensity evidence. And so the statutory basis for allowing that type of evidence is oftentimes used to show that a defendant has a pattern of criminal conduct that is consistently of a sexual nature, and that's why there are factual prerequisites for a proponent for the state to use propensity evidence. And in this case, the state had used this because it was going to establish and wanted to establish that the two minor victims who were the daughter and stepdaughter of the defendant, as they progressed to various residences outside, inside, and outside of Madison County, that there was a pattern of sexual misconduct that bore similar factual characteristics. So there's nothing in the case law that says there's a ratio analysis that is going to be dispositive of whether a due process violation occurs. In fact, it's conceivable that there would be a lot of instances where there's going to be a movements type thing because people move. The restrictions, I think, are really embedded in what the factual prerequisites for the court to make that determination of whether or not the propensity evidence is proper. So, and the court did give a limited instruction. So, in other words, the jury was told that you're going to limit yourself to offenses that occurred and your guilt is going to be determined based upon what occurred in Madison County. And that's a limited instruction that, coincidentally, was not given in Perez's case, which actually followed Walston, sort of repeating the Walston line that it's only modest restrictions. Walston characterized Cardinal Mone as essentially a factual outlier, that it was such a severe case that it almost compelled the result. I would submit that this case is not really that complicated. It involves two victims, not multiple victims. It involves a progression of events. So it's not like Cardinal Mone, the defendant, is placed in an extremely difficult position of having to defend against victims and offenses that kind of go back and forth and different people are charged and uncharged. It's not going to be any use to the defendant where they move to and the progression of places that they move to. Now, I agree with the defense counsel when she says, well, there's some confusion as they attempt to elicit from these youthful witnesses where they were at what time. But that doesn't really relate to the complexity of the case as it does relate to the complexity for the particular minors to be able to chronologically sequence that. That becomes part of the reasonable doubt aspect of it. But as far as whether or not this is a complex case factually, for the defendant to prepare for and for the jury to consider, I would submit that it does not involve 100 witnesses. It does not involve that type of volume of evidence that you found in Cardinal. So I think that this Court should heed Walston's holding that it's to be only through very extreme circumstances should the Cardinal Rule, called the Sacred Argument, be applied to overturn a judge's determination, otherwise proper determination, about the admissibility of propensity evidence. As far as the reasonable doubt argument is concerned, you'll have the record and I'm not going to re-argue the case. But as I say those words, I want to repeat that the standard review, of course, is not to retry the defendant. Lots of cases have inconsistencies and they seem to come even more so in cases involving youthful victims. Everything that the defendant argues is what the jury argues. But again, the standard is whether a rational trial fact would find the light most favorable to the state and that is burden of proof. So that is the standard that this Court must adhere to in reviewing the evidence of this case. Because I won't deny that there's some inconsistencies. I won't deny that it was a difficult case probably to put on evidence. But the jury heard all that and there's really indisputably evidence in the record which believed by a trial fact would be sufficient to find the defendant committed the acts of sexual assault that he was accused of. So that's all I would really have to say as far as the reasonable doubt argument is concerned. If the Court has any other questions, I will end there. Thank you, Your Honor. I have just a few very brief points. An important point in Walston is that they did say that high quantities of other crimes evidence may still be inadmissible. The justification for that was because it causes jury confusion or unnecessary delay. And no matter how clear the state thinks this case was, if it was complex for me to figure out, it took me months to do it with no deadline and with all of the experience of having handled these kinds of witnesses over these years, I can't begin to imagine how confusing it was for both people off the street to keep it straight, all of the contradictory testimony that was presented in this case. That's what matters. It matters if the jury thinks it's complex. If they're confused, that's what this needs to be concerned about, not about whether we think it's confusing or if it's not too many witnesses. It matters the impact this information has on the jury. That's the bottom line of the question. And the state also pointed out that there is no case law that says this ratio to that ratio of extra outside of the county offenses compared to these charges is too many. Now, I'm not suggesting that we need to have a hard and fast rule, but cases like this clearly indicate that we need something besides the cardinal rule that we have that is pretty much, if it's not a complete freak of nature case, it's a free-for-all and you can do whatever you want. Surely that's not what the legislature intended when they set up this statute and wrote it the way they did. And if we rubber stamp bringing in every single prior offense or alleged offense that has ever occurred since the beginning of time in this particular situation, I have no doubt in my mind that if we had 100 other allegations, they'd have presented those too. It seems to me that the justification that the state gave the court that these girls didn't know how old they were, didn't know where they lived, and that's why we can't put year dates on when things happened because that's not how the girls understood things. They understand it based on where they lived and what have you. That was their justification so they could present the entire progression. My point is the state didn't need to present the entire progression in order to show that this man had propensity. They could have presented that evidence and made that exact same point by the presentation of just a little bit of this evidence. And I wouldn't be complaining about it at all because the statute allows for that. But to bring in everything that has ever happened from the beginning of time is just too much. And there's got to be a better definition than we have right now in Cardinal. And maybe this is the case to give us a stronger line that is a little more case law to show us where the lines are drawn and that they're not so extreme as the Cardinal case suggests right now. We have to rehearse this conviction. Thank you. Thank you, Mr. Sterling. Mr. Bailey, we'll take the matter under review.